IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JERRY W. HEDRICK, on behalf of Himself and others similarly situated,**<br><br>    **Plaintiff,**<br><br>        v.<br><br>**BNC NATIONAL BANK,**<br><br>    **Defendant.** | Case No. 15-9358-JAR |

## MEMORANDUM AND ORDER

Plaintiff Jerry W. Hedrick brings this action to recover back wages and overtime under the Fair Labor Standards Act ("FLSA") of 1938, 29 U.S.C. § 201 *et seq.*, on behalf of himself and collectively on behalf of similarly situated employees. This matter comes before the Court on Defendant BCI National Bank's Motion to Stay Action Pending Arbitration, or in the Alternative, to Dismiss (Doc. 6). Defendant argues that the case should be dismissed or stayed pursuant to the Federal Arbitration Act ("FAA"). Defendant argues, in the alternative, for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff responds that he does not oppose staying the case pending arbitration. However, Plaintiff argues that the arbitrator, rather than the Court, should determine the issue of whether the claim can proceed as a class claim under the FLSA in arbitration. Further, Plaintiff argues that if the Court determines the class arbitration issue, the Court should allow the class claim to proceed in arbitration. Defendant argues in its Reply that the Court should determine the class arbitration issue, and that the claim should proceed to arbitration as an individual claim. The motion is fully briefed, and the Court is prepared to rule. Because Plaintiff does not oppose Defendant's motion and for the reasons stated below, the Court grants Defendant's motion and stays this case pending

arbitration. Further, the Court finds that the class arbitration issue must be determined by the arbitrator.

## I. Background

In March 2013, Plaintiff began working for Defendant as a loan officer in Overland Park, Kansas. As part of his employment, Plaintiff signed a Loan Officer Employment Agreement, which contained provisions governing Plaintiff's compensation and providing for arbitration of employment disputes. The arbitration agreement states in pertinent part:

> Any claim or controversy arising out of any provision of this Agreement, or the breach or alleged breach of any such provision, or any term, condition, or aspect of Employee's employment or the termination thereof, including any claims arising under federal, state, local, or other statutes, laws, or theories of liability, including claims in tort, contract, quasi-contract, and all other claims by Employee against Employer, will be settled by binding arbitration administered by the American Arbitration Association (the "AAA") under its National Rules for the Resolution of Employment Disputes as in effect at the time of the claim or controversy (the "Rules").[1]

Plaintiff continued to work for Defendant until September 2015. On October 27, 2015, Plaintiff filed this action.[2] Plaintiff's Complaint alleges that Defendant allowed him and other similarly situated employees to work in excess of forty hours per week without providing compensation at the required overtime rate, in violation of the FLSA.[3]

## II. Motion to Stay Pending Arbitration

### a. Legal Standards

While the interpretation of contracts—including arbitration agreements—is generally a matter of state law, the FAA imposes certain rules beyond those normally found in state contract

---

[1] Doc. 7-1 at 3.
[2] Doc. 1.
[3] *Id.*

law.[4]  The FAA applies to written arbitration agreements in any contract "evidencing a transaction involving commerce."[5]  Congress designed the FAA "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and, by enacting the FAA, created "a liberal federal policy favoring arbitration agreements."[6]  Under the FAA, a court should compel arbitration if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement.[7]  When determining the scope of an arbitration agreement, "[d]oubts should be resolved in favor of coverage."[8]

But despite its liberal policy, the FAA does not require a party "to submit to arbitration any dispute which he has not agreed so to submit."[9]  Instead, it requires that courts enforce "agreements to arbitrate, like other contracts, in accordance with their terms."[10]  So if a generally applicable state contract defense invalidates an arbitration agreement, or if grounds exist at law or equity that would call for the revocation of any contract, courts must not compel arbitration under the agreement.[11]  Enforcing the agreement according to its terms "is fully consistent with the goals of the FAA, even if the result is that the arbitration is stayed where the Act would otherwise permit it to go forward" because by rigorously enforcing the agreement according to

---

[4]*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009); *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[5]9 U.S.C. § 2.

[6]*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[7]9 U.S.C. §§ 2–3.

[8]*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

[9]*Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (quoting *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

[10]*Volt Info. Scis., Inc.*, 489 U.S. at 478 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

[11]*See id.*; *see also Perry v. Thomas*, 482 U.S. 483, 489, 492–93 n.9 (1987).

its terms, courts give "effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA."[12]

The Tenth Circuit applies a three-part test to determine whether an issue falls within the scope of an arbitration clause.[13] First, a court must classify the particular clause as either broad or narrow.[14] If the court is reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.[15] Where the arbitration clause is narrow, a collateral matter will generally be outside the scope of the agreement.[16] "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."[17]

### b. Discussion

Defendant argues that this case should be stayed pending arbitration or dismissed because Plaintiff's action for back wages and overtime pursuant to the FLSA falls within the scope of the arbitration agreement. Defendant contends that the arbitration clause is broad because it states that "any claim or controversy arising out of" the provisions of the Employment Agreement is subject to arbitration.[18] As noted above, Plaintiff does not dispute that his claim is subject to arbitration.

---

[12]*Volt Info. Scis., Inc.*, 489 U.S. at 478.

[13]*Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)).

[14]*Id.*

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]Doc. 7 at 6.

4

The Court agrees that Plaintiff's suit is subject to the arbitration clause. Defendant alleges that Plaintiff expressly agreed to the arbitration clause, and Plaintiff does not contest the validity of the agreement. Further, the Court construes the arbitration clause broadly. It is well settled that a clause providing for arbitration of any disputes "arising out of" an employment agreement constitutes a broad arbitration clause.[19] The clause at issue in this case, providing for arbitration of "any claim or controversy arising out of" the Employment Agreement, is broad. Thus, the presumption of arbitrability applies here. Moreover, Plaintiff's action for back wages and overtime "arises out of" the Employment Agreement, as the Agreement governed the employment relationship between the parties and set the amount of compensation Plaintiff was paid during his employment with Defendant.[20] Plaintiff's action thus falls within the scope of the arbitration clause. Therefore, the Court grants Defendant's motion to stay and orders the parties to proceed to arbitration.[21]

## III. Availability of Class Arbitration

Plaintiff argues that the question of whether his claim can proceed to arbitration as a class claim is a procedural question that the arbitrator, rather than the Court, should decide. Alternatively, Plaintiff argues that if the Court decides this question, it should determine that the

---

[19] *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967)) (holding that arbitration clause providing that "[a]ny controversy, claim, or breach *arising out of or relating to* this Agreement" shall be arbitrable was a broad arbitration clause under Supreme Court precedent) (emphasis in original); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274–75 (10th Cir. 2010) ("Looking to the plain language of the arbitration provision contained in the Reinsurance Agreements, including its use of the phrase 'arising out of,' we have little trouble determining that it is a broad provision.").

[20] Doc. 7, Ex. 1 at 3.

[21] Defendant argues, in the alternative, for dismissal of the case based on the arbitration agreement. There is a split of authority concerning whether a district court has discretion to dismiss rather than stay an action subject to arbitration. *P1 Group, Inc. v. Inabensa USA, LLC*, No. 14-1092-JAR, 2014 WL 4261405, at *2 (D. Kan. Aug. 28, 2014) (explaining circuit split). The Tenth Circuit has held that under Section 3 of the FAA, courts are obligated to stay litigation upon request of a party, rather than dismiss the action. *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010). Thus, the Court stays the proceedings in this case pending arbitration.

claim can proceed to arbitration as a class claim.  Defendant argues that the class arbitration issue is a substantive "question of arbitrability" that must be resolved by the Court, and that the Court should determine that the claim must proceed to arbitration as an individual claim.

To determine whether the class arbitration issue is a question for the Court or the arbitrator to decide, the Court must first determine whether the issue is substantive or procedural.[22]  Substantive "questions of arbitrability" include "certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy."[23]  Unless the parties "clearly and unmistakably provide otherwise," questions of arbitrability are for the Court to decide.[24]  Procedural questions, which relate to whether the parties have satisfied conditions that allow them to use arbitration, are for the arbitrator to decide.[25]

In support of his argument that the class arbitration question is for the arbitrator to decide, Plaintiff cites *In re Universal Service Fund Telephone Billing Practices Litigation*,[26] a District of Kansas case in which Judge Lungstrum held that the availability of class-wide arbitration was a question for the arbitrator, where the arbitration clause was silent on the issue.[27]  In so ruling, Judge Lungstrum relied on *Green Tree Fin. Corp. v. Bazzle*.[28]  In *Bazzle*,[29] the United States Supreme Court addressed the question of who should decide the class arbitration issue in the

---

[22]*Soc'y of Prof'l Eng'g Emps. in Aerospace v. Spirit Aerosystems, Inc.,* 541 F. App'x 817, 819 (10th Cir. 2013) ("We begin by determining whether the issue of arbitrability is substantive or procedural.").

[23]*Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2069 n.2 (2013) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)).

[24]*Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003).

[25]*Spirit Aerosystems*, 541 F. App'x at 819 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)).

[26]300 F. Supp. 2d 1107 (D. Kan. 2003).

[27]*Id.* at 1126–27.

[28]*Id.*

[29]539 U.S. 444 (2003).

6

context of a contract that did not address the issue.[30]  The Court held that because the class arbitration issue did not concern the validity of the arbitration clause or its applicability to the underlying dispute between the parties, the issue did not fall within the "narrow exception" of gateway arbitration matters that a court, rather than an arbitrator, should resolve.[31]  Plaintiff contends that *In re Universal* and *Bazzle* demonstrate that the arbitrator should resolve the class arbitration issue.

Defendant relies on post-*Bazzle* authority in arguing that *Bazzle* did not resolve the question of who determines the availability of class arbitration.  In *Stolt-Nielsen S.A. v. AnimalFeeds International Corporation*,[32] issued several years after *Bazzle*, the Supreme Court suggested that *Bazzle* did not resolve the question of who decides the class arbitration issue.[33]  In *Stolt-Nielsen*, the Court addressed the question of whether "imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act (FAA)."[34]  In dicta, the Court also discussed the impact of *Bazzle* on the question of who decides the class arbitration issue, explaining that:

> Unfortunately, the opinions in *Bazzle* appear to have baffled the parties in this case at the time of the arbitration proceeding.  For one thing, the parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration . . . In fact, however, only the plurality decided that question.[35]

---

[30]*Id.* at 447–50.

[31]*Id.* at 452–53.

[32]559 U.S. 662 (2010).

[33]*Id.* at 680; *see* Maureen A. Weston, *The Death of Class Arbitration After Concepcion?*, 60 U. Kan. L. Rev. 767, 775–76 (2012) ("In 2010, the Court's sentiment toward class arbitration appeared to take a sharp turn in *Stolt-Nielsen*").

[34]*Stolt-Nielsen*, 559 U.S. at 666.

[35]*Id.* at 680.

Ultimately, the Court held that it did not need to address the "who decides" question because the parties' agreement expressly assigned that issue to the arbitration panel.[36]

Three years after *Stolt-Nielsen*, the Court addressed the validity of an arbitrator's decision to allow class arbitration in *Oxford Health Plans LLC v. Sutter*.[37] The Court again explained that it was not in a position to determine the "who decides" issue because the parties agreed that the arbitrator should determine whether the contract authorized class arbitration.[38] However, the Court clarified its stance on the issue, explaining that "*Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability."[39] Thus, Defendant is correct in arguing that the Supreme Court has not yet resolved the "who decides" issue.[40]

In the absence of controlling Supreme Court precedent, a split of authority has developed regarding the "who decides" question. Like the Supreme Court, the Tenth Circuit has not directly addressed the question of who determines the availability of class arbitration. It has, however, held in an unpublished decision that the determination of whether a collective-bargaining agreement creates a duty for the parties to arbitrate class-wide disputes is a substantive "question of arbitrability" for the courts.[41] Two circuits—the Third and Sixth—have directly addressed the question of who decides class arbitrability since the Supreme Court's post-

---

[36]*Id.*

[37]133 S. Ct. 2064 (2013).

[38]*Id.* at 2068 n.2.

[39]*Id.*

[40]*See Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 1530 (2015) (noting that Supreme Court has not resolved the question of who decides the availability of class arbitration); *see also S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1359 (11th Cir. 2013) (same).

[41]*Soc'y of Prof'l Eng'g Emps. in Aerospace v. Spirit Aerosystems, Inc.,* 541 F. App'x 817, 819 (10th Cir. 2013)

*Bazzle* decisions, and both have held that it is a question of arbitrability for the courts.[42] The Fifth Circuit recently affirmed a decision that it issued before *Stolt-Nielsen* and *Sutter*, in which it relied on *Bazzle* in holding that the availability of class arbitration is a question for the arbitrator.[43] The court explained that although *Stolt-Nielsen* and *Sutter* clarified that *Bazzle* does not control on the issue of who determines the availability of class arbitration, these cases do not represent an intervening change in law requiring the Fifth Circuit to revisit its earlier decision.[44] The remaining circuit courts have not directly addressed the issue.[45] Some district courts have held that the "who decides" question is for the court, while others have held that it is for the arbitrator to decide.[46]

As the Supreme Court has suggested, there are "fundamental" differences between bilateral and class-wide arbitration, including the cost, efficiency, and speed of resolving the dispute.[47] These fundamental differences presumably create gateway issues of arbitrability that should be resolved by the Court, rather than the arbitrator.[48] However, even assuming that the availability of class arbitration is a "question of arbitrability," the Court finds that the arbitrator must determine this question because the Employment Agreement provides "clear and unmistakable evidence" that the parties intended the arbitrator to determine questions of arbitrability.

---

[42] *Opalinksi*, 761 F.3d at 332; *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 598–99 (6th Cir. 2013).

[43] *Robinson v. J&K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195–97 (5th Cir. 2016).

[44] *Id.*

[45] *Harrison v. Legal Helpers Debt Resolution, LLC*, No. CIV. 12-2145 ADM/TNL, 2014 WL 4185814, at *4 (D. Minn. Aug. 22, 2014).

[46] *Id.* (summarizing cases in which courts have held that availability of class arbitration is for arbitrator to determine); *Chesapeake Appalachia, LLC v. Suppa*, 91 F. Supp. 3d 853, 858–61 (N.D.W. Va. 2015) (holding that availability of class-wide arbitration is a judicial determination for the court).

[47] *Stolt-Nielsen*, 559 U.S. at 685–86; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011).

[48] *See Opalinski*, 761 F.3d at 335.

9

Here, the arbitration clause provides that arbitration will "be administered by the American Arbitration Association (the 'AAA') under its National Rules for the Resolution of Employment Disputes as in effect at the time of the claim or controversy (the 'Rules')."[49] These Rules state that "The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[50] Thus, pursuant to the arbitration clause, the arbitrator must determine whether class arbitration falls within the scope of the clause. Further, this District has held that the incorporation of the Rules provides "clear and unmistakable evidence" that the parties intended to delegate questions of arbitrability to the arbitrator.[51] Additionally, the seven circuits that have addressed the issue have held that the incorporation of the AAA's Commercial Arbitration Rules—which contain language identical to Rule 6(a) of the Employment Arbitration Rules—in an arbitration clause constitutes "clear and unmistakable evidence" that the parties agreed to arbitrate questions of arbitrability.[52] Thus, the parties' incorporation of the Rules into the arbitration clause constitutes a "clear and unmistakable" delegation of questions of arbitrability

---

[49] Doc. 7-1 at 3.

[50] Rule 6(a), AAA Employment Arbitration Rules and Mediation Procedures (available at www.adr.org) (last visited May 12, 2016). "The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration and Mediation Procedures." *Id.* Rule 1.

[51] *Seahorn v. JC Penney Corp.*, No. 12-CV-2617-CM, 2013 WL 452793, at *1 (D. Kan. Feb. 6, 2013) (citing *Nazar v. Wolpoff & Abramson, LLP,* No. 07–2025–JWL, 2007 WL 528753, at *4 (D.Kan. Feb. 15, 2007)); *Chen v. Dillard's Inc.*, Nos. 12-CV-2366-CM, 12-CV-2517-JTM, 2012 WL 4127958, at *2 n.1 (D. Kan. Sept. 19, 2012).

[52] *See, e.g.*, *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that incorporation of AAA Commercial Arbitration Rules served as clear and unmistakable evidence of parties' intent to delegate questions of arbitratbility to arbitrator); *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11CV371, 2013 WL 1332028, at *5 (E.D. Va. Mar. 29, 2013) (collecting cases).

to the arbitrator.  Accordingly, the Court finds that the arbitrator must decide the question of whether the arbitration clause allows for class arbitration.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Stay Action Pending Arbitration (Doc. 6) is **GRANTED**.  The Court stays all proceedings and orders the parties to proceed to arbitration.

**IT IS FURTHER ORDERED BY THE COURT** that the arbitrator will determine whether the arbitration clause allows for class arbitration.

**IT IS FURTHER ORDERED BY THE COURT** that the parties shall file a status report by **September 15, 2016** advising whether this matter has been resolved or whether arbitration is still pending.

**IT IS SO ORDERED.**

Dated: May 16, 2016

                                         S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE